**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| STACY LADON BROWN, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:17-CV-970-Y |
| § | |
| ERIC D. WILSON, Warden § | |
| FMC-Fort Worth, § | |
| § | |
| Respondent. § | |

**OPINION AND ORDER**

Before the Court is a Petition for a Writ of Habeas Corpus under U.S.C. § 2241 filed by petitioner Stacy Ladon Brown, a federal prisoner then housed at FMC-Fort Worth in Fort Worth, Texas.[1] After considering the pleadings and relief sought by Petitioner, the related briefs, and the applicable law, the Court concludes that the § 2241 petition must be **DENIED**.

**I. BACKGROUND/CLAIMS FOR RELIEF**

Petitioner Brown was convicted in the United States District Court for the Western District of Arkansas of knowingly possessing with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii) and sentenced to a term of

---

[1] It appears, from review of the records of the Bureau of Prisons ("BOP"), and court staff contact with the BOP South Central Regional Office, that Brown has been transferred to a community corrections center in Muskogee, Oklahoma. See www.bop.gov/inmate_locator (last visited May 1, 2019). As of the date of this order, Brown has not updated his address with this Court. He remains obligated to update the address of record.

imprisonment of 155 months. *United States v. Brown*, No. 2:07-CR-20005-RTD-1 (W.D. Ark. Aug. 21, 2008).[2] Brown raises two challenges in this § 2241 petition arising from the service of his sentence.

First, Brown challenges a disciplinary proceeding initiated against him while he was housed at FCI-El Reno in Oklahoma on April 5, 2017, for violating BOP disciplinary Code 205, Engaging in a Sexual Act, and the resulting penalty of a loss of 27 days of good-conduct time (GCT).(Pet.(doc.1) at 6–7.) Brown alleges the incident report supporting the disciplinary charge was issued as an act of retaliation for his threat to file a complaint against a staff member under the Prison Rape Elimination Act("PREA"),[3] and he claims the evidence does not support the finding that he committed the prohibited act. *(Id.* at 7.) Brown also challenges his loss of early release under 18 U.S.C. § 3621(e) after being expelled from the Residential Drug Abuse Program ("RDAP"). *(Id.* at 2,7.) He contends the staff's decision to expel him from RDAP was arbitrary and capricious. *(Id.* at 9.) He requests that this Court compel an

---

[2]The Court takes judicial notice of the docket and records of Brown's criminal case. *See* Fed. R. Evid. 201(B)(2) and (c)(1).

[3]Title 34, U.S.C. § 30301–30309 (West Pamphlet 2018). Although the PREA was drafted to "address the problem of rape in prison, authorize grant money, and create a commission to study the issue[,] it does not give prisoners any specific rights." *Johnson v. Rupert*, No. 6:11-cv-446, 2014 WL 6969202 at *5 (E.D. Tex. Dec. 9, 2014) (citing *Chinnici v. Edwards*, No.1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 13, 2008). Another district court explained "[e]ven if the [officer's] conduct did violate that statute, which is an issue the undersigned need not and does not reach, plaintiff's claim would not be actionable because the PREA simply does not establish a private cause of action." *Harold v. Goff*, No.16-13041, 2016 WL 8137642, at *4 (E.D. La. Dec. 1, 2016)(citing *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015) (other citations omitted)), *rep and rec. adopted*, 2017 WL 413082 (E.D. La. Jan. 30, 2017)). Other than referring to the PREA, Brown does not assert a claim in this Court under the PREA.

investigation into the RDAP treatment team and that both his PREA claim and disciplinary sanction "be consolidated and bifurcated in this case." *(Id.* at 8.) He ultimately seeks relief against his sentence in the form of an order directing the BOP to reinstate the twenty-seven days of lost good-conduct time and to grant him one year off his sentence in accordance with 18 U.S.C. § 3621(e). *Id.* at 8.

**II. EXHAUSTION**

In a traverse/reply to the response, Brown has provided copies of documents relating to his exhaustion of administrative remedies. (Traverse (doc. 13) at 18–25.) Otherwise the parties do not raise or contest the issue of exhaustion of administrative remedies. Thus, the Court does not address exhaustion and turns to the merits of Brown's claims for relief.

**III. ANALYSIS**

A. Claim Challenging Disciplinary Proceeding and Loss of GCT

On March 12, 2017, while incarcerated at FCI-El Reno, Brown received an incident report charging him with Engaging in a Sexual Act, Code 205, for an incident occurring at or around 10:50 a.m. that day.(App. (doc. 12-2) at 2, ¶ 5; 10.)[4] Specifically, the

---

[4]Although the Respondent's appendix is numbered in the lower right corner, the Court cites to the top-of-the-page numbering assigned to the pages within the appendix by the Electronic Case Numbering (ECF) system.

Incident Report recited:

> On the above date and time inmate Brown, Stacey Register Number 4700-063 had a female visitor come see him by the name of Rachel [redacted]. While monitoring the Nice Vision Professional Control camera I observed inmate Brown take his visitor's hand and place it on his crotch area. Shortly after that inmate Brown then placed his hand between her legs. Inmate Brown had been told about this kind of behavior in the past.

(App. (doc. 12-2) at 10, § 11.) An investigation of the incident report was completed later that afternoon. (App. (doc. 12-2) at 11, § 27.) Also on March 12, 2017, after advising Brown of his rights, the investigating lieutenant asked Brown if he wished to make a statement. (App. (doc.12-2) at 11, § 24.) The lieutenant reported:

> Inmate Brown #04700-063 was advised of his rights and acknowledged he understood his rights. Inmate Brown #04700-063 was given a copy of this Incident Report. Inmate Brown #04700-063 stated, "I grabbed her hand and put it on my dick." Inmate Brown #04700-063 displayed a fair attitude.

*(Id.)*

Brown then appeared before a Unit Disciplinary Committee ("UDC") on March 13, 2017. (App. (doc. 12-2) at 10, § 21.) He provided no statement to the UDC. (App. (doc. 12-2) at 10, § 17.) The UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for final hearing and disposition. (App. (doc. 12-2) at 10, § 18(B).) Brown was given written notice of his rights before the DHO on March 13, 2017. (App. (doc. 12-2) at 17.) Although Brown was provided the opportunity to request witnesses and a staff representative, he declined. (App. (doc. 12-2) 19.)

Brown appeared before the DHO on April 5, 2017. (App. (Doc. 12-2) at 21, § I(B).) The DHO recorded Brown's statement as, "Her hand was in my lap. Nothing else." (App. (doc. 12-2) at 21, § III(B).) The DHO considered the reporting employee's account of the incident, Brown's statement, photos taken of the visiting room at the time of the incident, and a supporting memo submitted by the staff member, and found Brown to have committed the prohibited act as charged. (App. (doc. 12-2) at 22, §§ IV, V.)

Based on these findings, the DHO disallowed twenty-seven days of Brown's GCT credit, sanctioned him to thirty days in Disciplinary Segregation, and suspended his commissary, telephone, and visiting privileges for sixty days. *(Id* at 22, § VI.) Finally, the DHO provided an explanation of the reasons for the sanctions imposed. *(Id.* at 22, § VII.)

In the context of a prison disciplinary proceeding resulting in the loss of good-time credits, constitutional due process requires that a prisoner at a minimum receive (1) written notice of the charges against him at least twenty-four hours prior to the disciplinary hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder that includes the evidence relied on and the reasons for the disciplinary action taken. *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974). A review of the record indicates that Brown was afforded all of these due-process

protections during the disciplinary process.

Brown received advance written notice of the charges on March 12, 2017, appeared before the UDC on March 13, 2017, and appeared before the DHO on April 5, 2017. (App. (doc. 12-2) at 1-3.) Brown received more advance notice than the twenty-four hour notice called for in *Wolff*. Additionally, he was given the opportunity to appear at the DHO hearing, to present witnesses, and to present evidence. He appeared before the DHO and made a statement, but neither presented documentary evidence nor requested witnesses or a staff representative. He was also provided a written statement as to the evidence the factfinder relied on and the reasons for the actions taken by the factfinder as required in *Wolff*.

Having determined that Brown was provided all process required by *Wolff*, the Court turns to the applicable standard of review. In reviewing a prison disciplinary action, a court must simply consider whether the decision of the prison officials was supported by "some facts" or "any evidence at all." *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981). Due process does not require that the evidence in such a proceeding eliminate all other possible conclusions. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record,

independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *(Id.* at 455-56 (citation omitted).) The reporting staff member's incident report, standing alone, constitutes some evidence. *Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). "Federal courts cannot retry every prison disciplinary dispute; rather the court may only act where arbitrary or capricious action is shown." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994)(citations omitted).

Brown contends there is no evidence to support the finding that he committed the act and the Incident Report was written in retaliation for his making a PREA allegation against an officer. But Brown has not supported his retaliation claim with any supporting evidence. Brown's allegation that the charging officer acted in violation of the PREA was investigated and determined to be "unfounded." (Pet. (doc. 1) at 15.)

Otherwise, contrary to Brown's argument, there is evidence to support the DHO's findings. The DHO relied upon the reporting employee's account of the incident, which described Brown's actions in the visiting room. The DHO also considered the still photo images from the video-camera

recording of Brown and his guest in the visiting room, and a supporting memorandum from staff who heard Brown admit to the sexual act when talking with the investigating lieutenant. The DHO also considered Brown's statement, in which he admitted the visitor's hand was on his lap but denied any other conduct, but gave the greater weight to the reporting staff member and to the other evidence.

Review of this record shows that there is some evidence to support the DHO's finding that Brown committed the prohibited act of Engaging in a Sexual Act, Code 205. Brown was not deprived of any constitutionally protected liberty interest when sanctioned for the incident report in this case. Consequently, Brown is not entitled to relief on his claim challenging the disciplinary proceeding and the loss of good time credits.

    B.    Claim Challenging Loss of Early Release under the Residential Drug Treatment Program

Brown also challenges his expulsion from the RDAP, which he contends was in violation of "institutional and RDAP rules" and was taken when the "follow-up" team members breached a duty of care to him. (Pet. (doc. 1) at 7.) As noted above, Brown seeks to be re-instated to the earlier release date he would have had under 18 U.S.C. § 3621(e), without the

expulsion from the RDAP program.

The respondent produced the declaration of Dr. Lawrence Sloan, a licensed clinical psychologist at the BOP and the Drug Abuse Program Coordinator at FMC-Fort Worth.(Sloan Decl. App.(doc. 12-1) at 1-3.) Dr. Sloan's declaration sets forth the history of Brown's participation in and expulsion from the RDAP program. Brown was initially determined to be eligible for early release and enrolled in the RDAP on January 25, 2016. (App. (doc. 12-1) at 2, ¶ 5.) He completed the 500-hour portion of the program on November 7, 2016, and began the follow-up services. *(Id.)* On February 16, 2017, Brown was transferred from FMC-Fort Worth to FCI-El Reno where he was to continue follow-up services at his new institution. *(Id.* at 2,¶ 6.) As discussed above, Brown received a disciplinary incident report at FCI-El Reno on March 12, 2017, and was placed in the Special Housing Unit. *(Id.* at 2, ¶¶ 6-7.) As a result, Brown received a formal warning on March 15, 2017, for violating institutional rules and the RDAP Agreement to Participate. *(Id.* at 2, ¶ 7.) Upon completion of the disciplinary process, Brown was expelled from the RDAP on April 20, 2017. His expulsion resulted from his inability to take part in the required thirty-day follow-up session due to his being placed in the Special Housing Unit as a result of his disciplinary violation. *(Id.* at 2, ¶ 7.) The RDAP Follow-Up Discharge Note recited that because Brown had been assigned to SHU, he was unable to comply with the monthly

aftercare programs that resulted in his being expelled from the follow-up program.(App. (doc. 12-1) at 15.) As a result of his expulsion, Brown was determined to be ineligible for early release under 18 U.S.C. § 3621(e). (App. (doc. 12-1) at 2, ¶¶ 7-8.) Brown challenges this decision to expel him from RDAP.

A prisoner has "no statutory or constitutionally protected right to participate in the RDAP or to receive a sentence reduction for completing such a program." *Hortman v. Upton*, No.4:15-CV-820-Y, 2016 WL4398379, at *3 (N.D. Tex. Aug. 18, 2016)(Means, J.) Instead, the BOP has discretion to decide who participates in the program and, of those participants, who is eligible for a sentence reduction under 18 U.S.C. § 3621(e). *See Lopez v. Davis*, 531 U.S. 230, 241 (2001)(providing that upon completion of RDAP, BOP "has the authority, but not the duty," to reduce a term of imprisonment); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (providing a prisoner has no constitutional right to participate in any prison rehabilitation programs). The Fifth Circuit has repeatedly held that there is no constitutionally protected liberty interest in early release from RDAP participation. *See Giraldo v. Laughlin*, 516 F. App'x 404, 405 (5th Cir. 2013); *Handley v. Chapman*, 587 F.3d 273, 281 (5th Cir. 2009)("The Due Process Clause does not itself confer a liberty interest in a sentence reduction for completion of an RDAP")(quoting *Richardson v. Joslin*, 501 F.3d 415, 418-20 (5th Cir. 2007)); *Rublee v. Fleming*, 160 F.3d 213, 217

(5th Cir. 1998) (no protected liberty interest in receiving sentence reduction).

Brown's expulsion from the RDAP was justified and was not in violation of his statutory or constitutional rights. *See Hortman*, 2016 WL 4398279, at *2-3 (rejecting federal inmate's claim that she was entitled to relief under § 2241 for being expelled from the RDAP program). Thus, Brown's claim for relief under § 2241 challenging his expulsion from the RDAP and resulting loss of a one-year reduction in sentence must be denied.[5]

## IV. CONCLUSION AND ORDER

For the foregoing reasons, petitioner Stacy Ladon Brown's petition for writ of habeas corpus under 28 U.S.C. § 2241 is **DENIED.**

SIGNED May 1, 2019.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[5] The respondent informs that Brown was able to re-enroll in the RDAP program once he transferred to FCI-Texarkana and was placed on the RDAP waiting list. (App. (doc. 12-1) at 3, ¶ 9.) On September 21, 2017, he was transferred to FMC-Fort Worth to again begin participating in RDAP and was again found eligible for early release. (App. (Doc. 12-1) at 2, ¶¶ 5, 10; at 20.) It appears this resulted in Brown's receiving approximately a two-month reduction in sentence. (Resp. (Doc. 11) at 12.) But Brown also does not have a constitutional right to early release from a successful completion of the RDAP, because the language of the statute is discretionary. *See Richardson v. Joslin*, 501 F.3d 415, 420 (5th Cir. 2007)("Because [the inmate] was not entitled to the reduction, the BOP's action is not a deprivation of a protected liberty interest and does not affect the duration of his sentence; he will serve no more time than that of his original sentence."). Thus, to the extent Brown asserts a separate claim challenging his sentence after his re-entry into and completion of the RDAP program, such claim is denied.